## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:19-CR-00139 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| EDGARDO RIVERA, *also known as* | ) | |
| EGGY | ) | JANUARY 14, 2020 |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge

Pending before the Court is the motion to withdraw guilty plea filed by Edgardo Rivera on October 4, 2019. (ECF No. 60.) For the reasons set forth herein, the motion is DENIED.

**Factual and Procedural Background**

On September 4, 2018, Edgardo Rivera ("Mr. Rivera") was charged by way of criminal complaint with possession with intent to distribute and distribution of heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The Complaint alleged that an individual identified as Victim #1 died from acute fentanyl toxicity in the early hours of January 17, 2017. (Compl. at ¶ 13, ECF No. 1-1.) A subsequent investigation revealed that Victim #1 purchased heroin from Mr. Rivera approximately twelve hours before his overdose and that the brand of heroin recovered near Victim #1 was consistent with that sold by Mr. Rivera.[1] (*Id.* at ¶¶ 13–33.) After discovering this information, in May and June of 2018, law enforcement conducted two controlled purchases of heroin from Mr. Rivera. (*Id.* at ¶¶ 34–36.) The laboratory for the Drug Enforcement Agency confirmed that the narcotics purchased during the first controlled purchase was a composite of fentanyl, heroin, and caffeine. (*Id.* at ¶ 35.)

---

[1] Based on the stipulation of offense conduct contained in the plea agreement, it appears that the Government's investigation grew to include a second customer of Mr. Rivera who died from fentanyl toxicity.

On October 5, 2018, Mr. Rivera was arrested and Federal Public Defender Charles F. Willson ("Attorney Willson") was appointed to represent him. On October 10, 2018, Mr. Rivera was released from custody on bond. Thereafter, Mr. Rivera filed several motions to continue the probable cause hearing so that he could evaluate his case, attend substance abuse treatment, and negotiate a resolution of the case that might not require indictment or a probable cause hearing.

On May 23, 2019, seven months after his arrest, Mr. Rivera appeared before the Court to waive indictment, to enter into a written plea agreement with the Government, and to plead guilty to a two-count information charging him with possession with intent to distribute and distribution of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and 924(c)(2) (the "Information").[2]

Prior to accepting the waiver and plea, the Court canvassed Mr. Rivera extensively under oath in order to ascertain whether this decision was a knowing, intelligent, and voluntary one. The Court began its canvass by reviewing with Mr. Rivera his educational background and physical and mental condition. Mr. Rivera acknowledged that he had "a little bit" of difficulty reading and writing English. Upon further inquiry, however, he confirmed that he had read the waiver of indictment, information, and plea agreement and that Attorney Willson had read these documents to him as well. The Court emphasized, "If, at any point I ask you a question that you're not sure what I'm asking you, you just let me know that and I will rephrase because it is important to me that you understand everything's that's going on here in this courtroom, okay." (Plea Hr'g Tr. at 5, May 23, 2019, ECF No. 59.) Mr. Rivera indicated that he understood, and the Court did provide certain clarifications upon request during the course of its canvass.

---

[2] The Information also contained forfeiture allegations relative to both the controlled substance and the firearms offenses.

With respect to his mental state, Mr. Rivera represented that he was sober and of clear mind. He explained that he was on a prescription medication, "but [he] didn't take it last night." (*Id.* at 6.) When the Court asked in response whether "[his] mind is clear," Mr. Rivera stated, "Yes." (*Id.*) After further discussing with Mr. Rivera his recent mental health and substance abuse treatment, the Court inquired as to whether Attorney Willson had "any problems communicating with [his] client" and whether he "ha[d] any reason to question his competence to waive indictment and enter a plea today." (*Id.* at 8.) Attorney Willson responded: "We've had no meaningful problems communicating, and I believe that he is competent, Your Honor." (*Id.*) Further, the Court recalls that at no time prior or thereafter did Mr. Rivera appear to have any issues understanding or following the proceeding.

The Court next canvassed Mr. Rivera concerning his decision to waive indictment and plead guilty. The Court discussed with Mr. Rivera, *inter alia*, his right to indictment, the indictment process, the trial rights he was waiving by pleading guilty, the maximum and mandatory minimum penalties associated with the charges to which he was pleading guilty, and the appeal waivers contained in the plea agreement. Mr. Rivera confirmed that he understood each of these matters. Although the Court did not specifically canvass Mr. Rivera concerning the elements of the offenses in the Information, he confirmed that Attorney Willson discussed the elements of the charges with him. The elements of these offenses were also contained in the plea agreement and were placed on the record by the Government during the plea hearing.

During the hearing, the Court also explored with Mr. Rivera his satisfaction with his appointed counsel. Mr. Rivera confirmed that he had had enough time and opportunity to consult with Attorney Willson concerning his decision to plead guilty. Mr. Rivera confirmed that he discussed with Mr. Willson the charges contained in the Information, the penalties associated with

those charges, "the elements of each offense" (*i.e.*, "what the Government would have to prove if we were to have a trial"), "the nature and scope of the Government's evidence" (*i.e.*, "who the witnesses might be, what those witnesses might say, or what the physical evidence would be offered at trial"), and the terms of the plea agreement. (*Id.* at 16; *see also id.* at 15, 29.) At no point in time did Mr. Rivera indicate that Attorney Willson had pressured or coerced him into waiving indictment and pleading guilty. To the contrary, Mr. Rivera confirmed that nobody had threatened, forced, or coerced him to waive indictment, to enter into the plea agreement, or to plead guilty. Mr. Rivera further affirmed that he was satisfied with Attorney Willson's representation.

After completing the canvass and accepting Mr. Rivera's guilty plea, the Court set Mr. Rivera's sentencing for August 21, 2019. Attorney Willson then made an oral motion to vacate bond and the conditions of release, explaining that "Mr. Rivera has expressed to me over a period of time his interest in helping everyone in this room move forward. And he thinks one of the ways that he can do that is by going into custody today."[3] (*Id.* at 47.) The Court granted that request, and Mr. Rivera self-surrendered to the United States Marshals Service that same day.

On July 8, 2019, Mr. Rivera filed a motion to continue sentencing, which was granted. On August 12, 2019, Mr. Rivera filed a second motion to continue sentencing. In response, the Court held a status conference on August 27, 2019, at which Attorney Willson orally moved to withdraw as counsel, citing a break down in the attorney-client relationship. Attorney Willson explained that "[his] ability to help [Mr. Rivera] going forward is compromised, in that some of the issues he may want to consider would require the advice of an independent counsel, or someone other than someone from the Federal Defender's Office." (Tr. at 3, Aug. 27, 2019, ECF No. 61.) The Court granted the motion to withdraw and appointed substitute counsel. Sentencing was reset for

---

[3] Attorney Willson was alluding to both victim's family members, some of whom were present in the courtroom.

October 28, 2019.  Substitute counsel later sought, and received, a continuance until January 3, 2020 so that he could familiarize himself with the case and prepare for sentencing.

On October 4, 2019, Mr. Rivera filed the instant motion to withdraw his guilty plea, which he supplemented on October 28, 2019 after receiving the plea hearing transcript.  The Government filed an opposition to the motion on November 21, 2019.  The Court convened a hearing on the motion initially on December 16, 2019.  At Mr. Rivera's request, the Court continued the hearing to December 23, 2019, and the hearing reconvened on that date.  Mr. Rivera did not offer evidence at either hearing and instead elected to proceed by way of oral argument on the existing record.

**Legal Standard**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, a defendant may withdraw his guilty plea prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal."[4]  Fed. R. Crim. P. 11(d)(2)(B).  "[A] defendant who seeks to withdraw his plea bears the burden of satisfying the trial judge that there are valid grounds for withdrawal. . . ." *United States v. Rosen*, 409 F.3d 535, 546 (2d Cir. 2005) (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992)) (internal quotation marks omitted).  The Second Circuit Court of Appeals has made clear that "[a] defendant has no absolute right to withdraw his plea of guilty." *Rosen*, 409 F.3d at 545 (quoting *United States v. Williams*, 23 F.3d 629, 634 (2d Cir. 1994)).  "[T]he decision whether to grant the motion to withdraw is committed to the district court's discretion and will be reversed only for abuse of discretion.  The court has that discretion where the moving defendant satisfies the court that there are valid reasons for withdrawal of the plea and

---

[4] The fair-and-just reason standard was embodied in Rule 32(d) until 1994, when it was moved to subpart (e) of Rule 32.  In 2002, the provision was again relocated, this time, to subpart (d) of Rule 11.  Because the change in the location was only stylistic, "cases interpreting the former versions of Rule 32 are authority for the proper interpretation of the current Rule 11(d)(2)(B)." *United States v. Rosen*, 409 F.3d 535, 545 (2d Cir. 2005).

the court concludes that those reasons outweigh any prejudice to the government and the strong societal interest in the finality of guilty pleas." *Rosen*, 409 F.3d at 546 (citations omitted).

"In the absence of special circumstances, the validity of a plea of guilty is determined by reference to whether it was intelligent and voluntary. As a general matter, a plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988) (citations omitted). "Whatever the basis for the motion, the standard for withdrawing a guilty plea is stringent." *United States v. Gonzalez*, 647 F.3d 41, 57 (2d Cir. 2011) (quoting *Rosen*, 409 F.3d at 546) (alterations omitted; internal quotation marks omitted). "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Rosen*, 409 F.3d at 546 (quoting *Gonzalez*, 970 F.2d at 1100).

**Discussion**

Mr. Rivera argues that fair and just reasons exist to permit him to withdraw his guilty plea because (1) he did not intelligently or voluntarily waive indictment and plead guilty, (2) Attorney Willson rendered ineffective assistance when advising him to enter into the plea agreement and plead guilty, and (3) Attorney Willson coerced him into pleading guilty. The Government contests each of these claims of error and asserts that Mr. Rivera's sworn statements at the plea hearing establish that he intelligently and voluntarily waived indictment and pleaded guilty. The Government further contends that it would be unfairly prejudiced if Mr. Rivera were permitted to

withdraw his guilty plea. The Court concludes that Mr. Rivera has failed to establish that fair and just reasons exist for permitting him to withdraw his guilty plea.

**Mr. Rivera's Plea Was Intelligently and Voluntarily Made**

Mr. Rivera first argues that he should be permitted to withdraw his plea because he did not understand at the time that he pleaded guilty his right to indictment, his right to challenge the Government's evidence through a motion to suppress and subsequent appeals, or what the Government would have to prove to convict him of using a firearm in furtherance of a drug trafficking crime. Mr. Rivera attributes this lack of understanding, in part, to his failure to take his prescription medication the night before the plea hearing, his learning disability, and his lack of familiarity with the criminal justice system.

To determine whether a defendant entered into a plea intelligently and voluntarily, a court must consider all of the relevant circumstances surrounding the plea. *See Gonzalez*, 647 F.3d at 56. "Given that solemn declarations in open court carry a strong presumption of verity, and given the strong societal interest in the finality of guilty pleas, defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea." *Id.* (alterations omitted; citations omitted; internal quotation marks omitted); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Maher*, 108 F.3d 1513, 1521 (2d Cir. 1997) ("The district court is entitled to accept a defendant's statements under oath at a plea allocution as true.").

Mr. Rivera does not contest that his sworn statements at the plea hearing establish that he understood his right to indictment, the nature of the charges in the Information (including what the

Government must prove to convict him), the trial rights he was waiving by pleading guilty, and the terms of the plea agreement, including the appeal waivers contained therein. Instead, Mr. Rivera argues that his sworn statements are unreliable because he did not take his medication the night before the plea hearing. The only "evidence" Mr. Rivera offers concerning the impact of his failure to take his medication, however, are two informational summaries about the general uses and effects of the medication at issue. Even if the Court considered the information contained in these summaries, they provide little insight into what, if any, effect Mr. Rivera's failure to take his medication actually had on his mental state on May 23, 2019. As such, they do not rebut the evidence from the plea hearing that Mr. Rivera was able to understand and follow the proceeding. After indicating that he did not take his medication the night before, Mr. Rivera affirmed that his mind was clear. Mr. Rivera's demeanor and response to questioning was entirely appropriate throughout the proceeding, and he proved capable of consulting with counsel when questions arose. Neither Mr. Rivera nor Attorney Willson ever indicated that Mr. Rivera was having difficulty following or understanding the proceeding. Attorney Willson also confirmed that he believed that Mr. Rivera was competent to plead guilty. For these reasons, Mr. Rivera has failed to overcome the presumption of veracity afforded to his sworn statements.

Mr. Rivera next contends that his decision to plead guilty was not intelligent and voluntary because he did not fully understand his right to challenge the Government's evidence through a motion to suppress.[5] There is no evidence in the record concerning whether and to what extent Attorney Willson discussed with Mr. Rivera his right to challenge the Government's evidence through a motion to suppress, and Mr. Rivera has not offered any evidence to shed light on the

---

[5] Mr. Rivera also asserts in passing that he did not understand his right to appeal, but the Court canvassed Mr. Rivera on his waiver of his right to appeal or collaterally attack his conviction and sentence. Mr. Rivera's bald after-the-fact assertion that he did not understand his appeal rights is insufficient to establish a fair and just reason to permit him to withdraw his guilty plea.

nature of his lack of understanding or how that lack of understanding impacted his decision to plead guilty. The Court did however expressly advise Mr. Rivera that at a trial of his case he would have the right to "challenge the Government's evidence." (Plea Hr'g Tr. at 17.) A right that he stated he understood and one which he further understood would be waived by a plea of guilty. "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757 (1970). On the record before the Court, Mr. Rivera's belatedly asserted misapprehension regarding possible Fourth Amendment claims does not provide a basis for permitting him to withdraw his guilty plea.

Lastly, Mr. Rivera challenges the validity of his plea on the grounds that his learning disability made it "impossible for him to knowingly and voluntarily agree to enter into a plea agreement." (Def.'s Mem. L. at 4, ECF No. 60-1.) Specifically, he claims that he did not receive a final version of the plea agreement until the day of the plea hearing[6] and, therefore, did not have sufficient time to comprehend its meaning. These assertions are also unsupported by any competent evidence. The only information the Court has concerning Mr. Rivera's learning disability is his statement at the plea hearing that he had "a little bit" of difficulty reading. (Plea Hr'g Tr. at 5.) This fact alone does not call into question Mr. Rivera's ability to understand the terms of the plea agreement. At the plea hearing, Mr. Rivera represented, without equivocation, that he read the plea agreement, that his attorney read the plea agreement to him, that he discussed the terms of the plea agreement with his attorney, that he understood the terms of the plea agreement, that he had enough time and opportunity to discuss his decision to plead guilty with his attorney, and that he did not have any questions for Mr. Willson or the Court about the terms

---

[6] Mr. Rivera stated, however, in his motion that Attorney Willson provided him with an example plea agreement from another case to review in advance of the plea hearing.

of the plea agreement or the consequences of entering into it.  The terms of the plea agreement were further summarized on the record by the Government, and Mr. Rivera confirmed that there was not anything about the Government's recitation that he "w[as]n't sure about or disagreed with."  (*Id.* at 29.)

In sum, as found by the Court during the plea hearing, Mr. Rivera's sworn statements during the plea hearing established that his decision to waive indictment, to enter into the plea agreement, and to plead guilty was a knowing, intelligent, and voluntary act.  Although Mr. Rivera has raised several challenges to the reliability of his sworn statements at the plea hearing, there is an inadequate basis for disregarding his sworn statements or otherwise finding them unreliable or untrue.

### Mr. Rivera Has Not Established Ineffective Assistance of Counsel

Mr. Rivera next contends that he should be permitted to withdraw his guilty plea because Attorney Willson failed to advise him properly of the terms of the plea agreement and "his due process rights."[7]  (Def.'s Mot. at ¶ 9, ECF No. 60.)

Ineffective assistance of counsel during the plea stage of a proceeding can provide a basis for granting withdrawal of a guilty plea "to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty."  *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008) (quoting *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005)).  "To advance an ineffective assistance of counsel claim in the context of a plea, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different.  To satisfy the second prong . . . in the context of plea negotiations, the

---

[7] Mr. Rivera also accuses Attorney Willson of instructing him to answer the Court's questions inaccurately. Mr. Rivera has offered no evidence to support this dubious contention.

defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *Doe*, 537 F.3d at 213–14 (citations omitted; internal quotation marks omitted).

In support of this claim, Mr. Rivera relies upon typographical errors in the plea agreement to demonstrate that Attorney Willson was not diligent during his representation. It is an unfortunate reality that plea agreements sometimes contain typographical errors that are identified and corrected by counsel before or even during a plea hearing. All counsel are encouraged to read plea agreements carefully for typographical or substantive errors prior to any plea hearing. Although the typographical errors in this case are unfortunate, none of them, individually or collectively, establish that Attorney Willson rendered ineffective assistance to Mr. Rivera.

The first error cited appears in the forfeiture provision of the plea agreement where it states that Mr. Rivera "acknowledges that he possessed the firearm and ammunition in violation of 18 U.S.C. § 922(g)(1)." (Plea Agreement at 3, ECF No. 38.) Section 922(g) prohibits certain categories of persons from shipping, transporting, possessing, or receiving firearms. The parties agree that Mr. Rivera does not qualify as a prohibited person under Subsection (1) of Section 922(g) because he had not previously been convicted of a felony. There is no dispute, however, that Mr. Rivera does qualify as a prohibited person under Subsection (8), which applies to persons who are the subject of a domestic protective order. Given that Section 922(g) does apply to Mr. Rivera, and Mr. Rivera has not asserted that Attorney Willson otherwise failed to explain the forfeiture provision to him, the incorrect reference in the plea agreement to Section 922(g)(1), rather than 922(g)(8), does not prove deficient performance.[8]

---

[8] The forfeiture provision of the plea agreement also references 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). Mr. Rivera does not dispute that the firearm in question is subject to forfeiture under these statutes as well.

The two additional typographical errors relied upon are even less compelling on this issue. In the plea agreement, one of the appeal waivers inadvertently referenced a $100 special assessment fee, rather than a $200 special assessment fee.[9] (Plea Agreement at 8.) This error was identified and corrected at the plea hearing. Mr. Rivera has not claimed that Attorney Willson failed to advise him of the applicable special assessment fee or that this typographical error influenced his decision to enter into the plea agreement. Lastly, the stipulation of offense conduct incorrectly stated that "[l]aw enforcement seized approximately 300 grams of controlled substances containing a detectable amount of heroin and fentanyl" when the amount seized was only 200 grams. (*Id.* at 12.) Although this is an important substantive error, it was *Attorney Willson* who identified this error and the stipulation was thereafter manually corrected prior to the plea hearing, which further undermines any claim of a lack of diligence or attention on Attorney Willson's part.

On this record, the Court cannot conclude that Attorney Willson rendered ineffective assistance when advising Mr. Rivera. Mr. Rivera stated under oath at the plea hearing that he had enough time and opportunity to discuss his decision to plead guilty with Attorney Willson and that he was satisfied having Attorney Willson represent him. These representations, which the Court accepts as true, defeat Mr. Rivera's claim of ineffective assistance of counsel. *See United States v. Harper*, 737 Fed. Appx. 17, 24 (2d Cir. 2018) (summary order) (concluding defendant's claim of ineffective assistance "lacks support in the record before us because Harper stated under oath at the time he pleaded guilty that he was satisfied with trial counsel's representation"), *cert. denied*, 139 S. Ct. 948 (2019).

---

[9] The plea agreement correctly states in the penalties section that Mr. Rivera is required "to pay a special assessment of $100 on each count of conviction, for a total of $200." (Plea Agreement at 3.)

**Mr. Rivera Was Not Coerced into Pleading Guilty**

Mr. Rivera contends that "[he] was coerced into entering the plea agreement by [Attorney Willson's] instructions to him about his choice to accept the plea agreement or face a much harsher sentence at trial." (Def.'s Mot. at ¶ 8.) This claim, even if supported by evidence, which it is not, does not provide a basis for permitting withdrawal. As the Second Circuit has made clear, "defense counsel's blunt rendering of an honest but negative assessment of [a defendant's] chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea." *United States v. Juncal*, 245 F.3d 166, 172 (2d Cir. 2001); *e.g.*, *United States v. Moree*, 220 F.3d 65, 72 (2d Cir. 2000) ("That the attorney advised [the defendant] to take the [plea] offer and warned him that his failure to do so would lead to a thirty year sentence merely asserts that the lawyer gave professional advice as to what the consequences of his choice might be. The defendant's statement that he was 'scared' is understandable, but is not attributed to any misconduct of his attorney.").

The record from the plea hearing further rebuts Mr. Rivera's contention that he was coerced into waiving indictment and pleading guilty. The Court asked Mr. Rivera whether anyone had threatened, forced, or coerced him into waiving indictment, entering into the plea agreement or pleading guilty, and he responded, "No," to each line of inquiry. (Plea Hr'g Tr. at 12, 29.) Mr. Rivera's decision to enter custody the day he pleaded guilty further undermines his coercion argument. This decision on his part suggests that on the day of the plea hearing Mr. Rivera had accepted responsibility for his conduct and was ready and willing to accept the attendant consequences, not that he had recently been coerced into pleading guilty.

**The Timing of the Motion and Undue Prejudice to the Government Weighs in Favor of Denying the Motion to Withdraw**

The Government argues that the motion to withdraw should be denied because of the significant time interval between when Mr. Rivera was arrested (October 2018), when he pleaded guilty (May 2019), and when he filed the motion to withdraw (October 2019). If Mr. Rivera was permitted to withdraw his guilty plea, the Government asserts that it would be prejudiced because it "would again need to interview a number of expert and lay witnesses," "present the matter to a Grand Jury for an indictment," and prepare for trial more than one year after Mr. Rivera's initial arrest. (Gov't Opp. Mem. at 12, ECF No. 65.) The Court agrees with the Government that these factors counsel against permitting Mr. Rivera to withdraw his guilty plea.

The amount of time that has elapsed between the plea and the motion and prejudice to government are common factors considered when determining whether a defendant has shown a fair and just reason to justify withdrawal. *United States v. Rosen*, 409 F.3d 535, 546 (2d Cir. 2005); *United States v. Schmidt*, 373 F.3d 100, 102–103 (2d Cir. 2004). Although courts ordinarily focus on the time that has elapsed between the plea and the motion, the more significant time period in this case is the year that has elapsed since Mr. Rivera was arrested. During that time, memories have undoubtedly faded as to the events at issue. The Court credits the Government's representations about the time and resources that will need to be expended to reinstate Mr. Rivera's prosecution. In addition, because Mr. Rivera waived indictment, the Government will not have the benefit of a record of grand jury proceedings when reinstating its prosecution.

Importantly, this prejudice is not attributable to any lack of diligence on the part of the Government. It is attributable to Mr. Rivera's repeated requests for a continuance so that he could evaluate his case, attend substance abuse and mental health treatment, and negotiate a resolution with the Government. To be clear, the Court does not fault Mr. Rivera or his counsel for requesting

additional time with which to undertake these endeavors. Continuances are often necessary and appropriate to allow a defendant and his counsel to evaluate a case fully and either prepare for trial or negotiate an alternative resolution. The fact that the delay at issue here is attributable to someone other than the Government, however, is an important consideration when assessing prejudice.

***

The decision to waive indictment and plead guilty is undoubtedly a difficult one to reach, perhaps made more so if a defendant, such as Mr. Rivera, has had very limited exposure to the criminal justice system and is facing a significant period of incarceration. That a defendant might second-guess the decision to plead guilty is understandable. But a change of heart does not provide a valid basis for permitting withdrawal of a guilty plea that has been knowingly, voluntarily, and intelligently made. *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000) (per curiam). "[S]ociety has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (alteration omitted; citation omitted; internal quotation marks omitted). As a result, there are limited circumstances in which withdrawal of a guilty plea is permitted. *United States v. Laano*, 58 Fed. Appx. 859, 860 (2d Cir. 2003) (unpublished) ("Because of the great seriousness of the declaration of guilt, and the potential for gamesmanship that would attach to easy revocability of that plea, we have limited the circumstances in which a plea may be withdrawn."). None of those circumstances are present here.

**Conclusion**

For the reasons set forth herein, Mr. Rivera's Motion to Withdraw Guilty Plea [ECF No. 60] is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of January 2020.

_/s/ Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE